Sanderson v. Voelcker.

E. C. SANDERSON *et al.*, Appellants, v. O. C. VOELCKER *et al.*, Respondents.

### St. Louis Court of Appeals, November 22, 1892.

1. **Judgments Obtained by Fraud:** EQUITABLE RELIEF: LACHES. Fraud in procuring a judgment is ground for equitable relief, but such relief is granted only when it is made to appear that the complainant himself was free from negligence.

2. ———: ———: ———. And where the parties to an action, set for trial before a justice of the peace, had orally agreed that the plaintiff should have a continuance entered, and the plaintiff in violation of that agreement procured the entry of a judgment in his own favor, it was *held* that the failure of the defendant to attend the trial, or to look after the cause until the time for an appeal from the judgment had expired, did not constitute laches.

3. ———: ———: SOLVENCY OF PARTY CHARGED WITH THE FRAUD. The solvency of a party, charged with having procured a judgment by fraud, does not affect the right of the injured party to relief in equity against the enforcement of the judgment.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*R. S. McDonald, M. Kinealy* and *Jas. R. Kinealy,* for appellants.

*Robert W. Goode,* for respondents.

BIGGS, J.—This is a proceeding in equity to enjoin the levying of an execution issued under a judgment rendered by a justice of the peace, and to set aside such judgment. The plaintiff in the execution, and the constable to whom it was directed, are made parties defendants. A general demurrer to the bill was filed, which the court sustained. The plaintiffs refused to

amend their pleading, and the court entered a fina
judgment on the demurrer. The plaintiffs have
appealed.

The petition stated in substance that, on the first
day of June, 1891, the defendant Voelcker instituted a
suit of replevin before a justice of the peace to recover
from the plaintiff Sanderson the possession of certain
cows, and damages for their detention; that Voelcker
claimed to be entitled to the possession of the cows by
virtue of a chattel mortgage, alleged to have been exe-
cuted and delivered to him by one Milward; that, on
the second day of June, 1891, the plaintiff Sanderson
was served with process in said suit, and was therein
required to appear before said justice on the thirteenth
day of June, to answer the complaint, and that on
the said second day of June the plaintiff Sanderson
retained possession of the property by giving to Dolan,
the constable, a forthcoming bond with his coplaintiff,
Shea, as his surety. The petition then proceeds as fol-
lows: "Plaintiffs state that neither said Milward nor
said Voelcker had any claim to said property or to the
possession thereof at the time said suit was brought, but
said property was then and there the absolute property
of this plaintiff Sanderson, free from all just and lawful
claims of any person whatever, and that after the filing
of said complaint, and prior to the thirteenth day of
June, 1891, plaintiff, E. C. Sanderson, so represented
to said Voelcker, and offered to satisfy said Voelcker
of those facts if some time were given him to do so,
and that thereupon, and to enable plaintiff Sanderson
to so satisfy said Voelcker, and to prevent the continu-
ance of said litigation, and to make an amicable settle-
ment of same, it was then and there agreed by and
between this plaintiff and said Voelcker, acting then
and there by their duly authorized attorneys and agents,
that said suit should not be tried on said thirteenth day

of June, 1891, and these plaintiffs or their attorneys should not attend before said justice to answer in said suit on the thirteenth day of June, 1891; but that said Voelcker by himself or his authorized attorney would, on the last day mentioned, attend before said justice, and, for the purpose of obtaining an amicable settlement of said suit, and giving plaintiff an opportunity of getting proofs to satisfy said Voelcker that plaintiff Sanderson owned the said property, would cause and procure the said justice to continue the hearing of said suit to a future day, and give to these plaintiffs due and ample notice of the day to which said hearing would be so continued by said justice; and plaintiffs state that they fully relied on said agreement and promises last mentioned of said Voelcker, and because thereof did not believe that said suit would be heard by said justice on the thirteenth day of June, 1891, and that, relying upon the aforesaid agreement and promises of said Voelcker, they or either of them did not attend before said justice on said thirteenth day of June, and did not receive any notice of the day to which the hearing of said suit was or was to be adjourned, and received no notification whatever concerning the same until the first day of July, 1891, when for the first time plaintiffs were informed that said Voelcker had, on the thirteenth day of June, 1891, appeared before said justice, and, concealing from him the aforesaid promises and agreement, caused and procured said justice to render judgment for him, said Voelcker, as hereinafter stated; and plaintiffs state that in truth and in fact said Voelcker, without any notice to the plaintiffs or either of them of his intention so to do, and in violation of his said agreement and promises, with intent to cheat and defraud plaintiffs, did appear before said justice on said thirteenth day of June, and caused said justice then and there to assess the value of said property at

$150, and to render judgment against plaintiffs in this suit, that plaintiff Sanderson restore possession of said property to said Voelcker, or at the election of said Voelcker for the sum of $150, and $10 damages, falsely alleged to have been sustained in that behalf, which judgment was then and there entered on the docket of said justice as in and by said docket appears." The petition contained the further allegations that the plaintiffs were residents of the city of St. Louis, and did not receive notice of the judgment until the time for taking an appeal had expired; that Voelcker had elected to exact the assessed value of the property, and that an execution had been issued for that amount, together with the damages, and placed in the hands of the defendant Dolan, who was then threatening to levy the same on the property of the plaintiffs, and that the defendant Voelcker had instituted a suit on the delivery bond. In conclusion, it was averred that Sanderson had and still has a valid and perfect defense against the suit brought by Voelcker; that, if the opportunity had been afforded, he could then have produced several witnesses (several of whom were named) by whom he could prove that neither Voelcker nor Milward had any title to the cows, but that the plaintiff Sanderson was then, and now is, their absolute owner.

Among the grounds of equitable jurisdiction is relief against frauds in verdicts, judgments, decrees and other judicial proceedings. 1 Story on Equity Jurisprudence, sec. 252. This principle has been recognized by the supreme court in the case of *Bresnehan v. Price*, 57 Mo. 422. The court speaking through Judge WAGNER said: "Nothing is better settled than that where, by mistake or fraud, a party has gained an unfair advantage in proceedings in courts of law, which must operate to make that court an instrument of injustice, courts of equity will interfere and restrain

him from reaping the fruits of the advantage thus improperly gained." This is the law of all of the decisions and text-books so far as our investigation has gone. High on Injunctions [2 Ed.] secs. 190, 201, and authorities cited. But equitable relief is granted in such cases *only* when it is made to appear that the complainant himself was free from negligence. In this we apprehend the circuit court encountered its difficulty.

If it could be said that the plaintiff Sanderson was negligent in any respect, it was in placing reliance on the oral statements of Voelcker's attorney, and in neglecting to look after the case until the time for taking the appeal had expired. We find no authority to support the statement of counsel that such agreements, as are set forth in the bill, must be in writing, and made a matter of record in the court where the suit is pending. But on the contrary, in the case of *Kent v. Ricards*, 3 Md. Ch. Rep. 392, the complainant relied on the oral promises and assurances of the defendant's attorney, that the judgment should not be taken until it was ascertained that certain demands, which had been assigned to them, were insufficient to pay off the claim sued on. After these promises were broken (by entering judgment against the complainant), the defendant's attorney again promised that the judgment should not be enforced, but that he would proceed to collect the assigned accounts. The complainant relied on these promises which were disregarded, and the court held that no negligence could be imputed to him for so doing. The enforcement of the judgment was enjoined.

In the case of *Hentig v. Sweet*, 27 Kan. 172, Sweet had made payments on the note in suit, which had not been credited. Hentig promised Sweet that he would enter the proper credits, and take judgment

for the balance that was actually due.   Relying on this promise Sweet did not attend court.   Hentig failed to give the credits, and, without any notice to Sweet and in his absence, took judgment for the full amount of the note.   The court held that Sweet was not guilty of negligence in relying upon the promises made by Hentig.   The   collection   of   the   judgment   was restrained upon the payment by Sweet of the amount conceded to be due.

We think it very clear, both on principle and authority, that Sanderson had a right to rely on the promise of Voelcker's attorney that the replevin suit would not be tried on the day it was set for trial, and we also think that   negligence cannot be imputed to Sanderson for failure to make inquiries about the case in time to have taken an appeal, in view of the allegations in the bill that it was understood that Sanderson should not attend on the day set for the trial of the case; that the case should be continued to some future time; and that the attorney was to notify Sanderson of the re-setting.   In addition to these averments the bill set forth facts sufficient, if true, to make out a complete defense to the replevin suit.   If Sanderson was prevented from making this defense by the fraudulent promises and representations of the defendant's attorney, and was prevented from taking an appeal by like promises, we can conceive of no good reason why the case would not be heard on its merits, and full relief granted to the plaintiffs, if they should succeed in establishing the allegations of their bill by satisfactory proof.

We do not think that it was necessary to aver that Voelcker was insolvent.   Such an averment would only have tendered an immaterial issue.   If the judgment was fraudulently obtained, and Sanderson had a good defense in the replevin suit and was prevented from

making it either by the fraud of Voelcker or his attorney, he has a right to invoke the aid of chancery for his protection. It is his only *adequate* remedy.

The judgment of the circuit court will be reversed and the cause remanded. All the judges concur.