OLLIE M. BECK, Appellant, v. D. P. JACKSON et al., Respondents.

St. Louis Court of Appeals, November 7, 1911.

1. INJUNCTIONS: Judgments: Enjoining Fraudulent Judgment. Where counsel enter into a written agreement for the continuance of a case pending in a justice's court, the enforcement of a judgment fraudulently obtained by one party during the time it was to have been continued should be enjoined.

2. ———: ———: ———: Sufficiency of Evidence. In an action to enjoin a judgment alleged to have been fraudulently obtained, *held* that the denial of an injunction was not so manifestly wrong as to justify the appellate court in disturbing it.

Appeal from Scotland Circuit Court.—*Hon. Charles D. Stewart,* Judge.

Affirmed.

N. M. *Pettingill,* J. E. *Luther* and E. R. *McKee* for appellant.

*Smoot & Smoot* for respondent.

STATEMENT.—The trial court granted a preliminary injunction restraining the defendants from enforcing a judgment for poll taxes which the defendant city of South Gorin obtained against the plaintiff Beck before defendant Jackson, a justice of the peace, but, upon a final hearing, dissolved this injunction. The plaintiff appeals and assigns for error that the finding and judgment of the court on final hearing should have been for plaintiff.

The substance of Beck's complaint is that the poll tax suit had been continued by agreement of counsel to March 3, 1908, and that in violation of that agreement the attorney for the city fraudulently procured the justice to give judgment at least ten days before that date; that as the fact that judgment was rendered was not discovered by Beck or his counsel for more than ten days, the right to take an appeal had been lost.

It appears from the evidence that the poll tax suit against Beck was tried—that is, the evidence was heard and arguments were made—before the justice on December 27, 1907. He did not decide the case then however. There were two other poll tax cases pending in his court, to be tried by jury, and he stated that he would defer deciding the Beck case until they were tried, as he did not wish by his judgment to influence the verdicts in the other cases. All three cases were then continued to February 4, with the understanding,

as we have mentioned, that the Beck case would be decided on that day after the two others were tried. As the 4th day of February approached it become apparent to counsel (they were the same in all three cases) that it would not be convenient for them to be present in the justice court on that day. One of the attorneys for Beck, Judge McKee, was at Wayland, and at his request Mr. Waters, attorney for the city of South Gorin, went there and entered into a written agreement in the form of a letter to the justice, signed by both of them. That agreement has been lost and a knowledge of its contents is dependent upon oral testimony. What its provisions were is admittedly the crucial question in this case.

On behalf of plaintiff herein, Judge McKee, his attorney, testified that the agreement provided that the poll tax cases pending before the justice should all be continued until the 3rd of March; that he and Waters signed the agreement, and it was left with Waters and mailed by him to the justice. The plaintiff, Ollie M. Beck, testified that Mr. Waters told him "on the streets in Gorin" that all the poll tax cases had been continued. A Mr. Lough, who had been a witness for Beck before the justice, testified that during the month of February, after the 4th, the justice had told him the Beck case was continued to the 3rd of March because of a letter he had received from McKee and Waters.

On behalf of the defendants herein, Mr. Waters, attorney for the city of South Gorin, with whom the agreement is alleged to have been made, testified that the agreement was to continue the Reynolds and Shawley cases and to render a decision in the Beck case; that both of them signed the agreement, and McKee got a stamp and mailed it, or said he would. He stated that he and Beck were not on speaking terms since the poll tax suit was pending. The justice, Jackson, was called as a witness by the plaintiff. He testified that he got a letter signed by McKee and Waters, tell

ing him to continue the Shawley and Reynolds cases to the 3rd of March and asking for a decision in the Beck case. He said that he thought that the part asking him to render a decision in the Beck case was written on the back of the letter. He further testified on behalf of plaintiff that he had arrived at a decision on December 27, when he heard the Beck case, and on the morning of February 4, wrote up the judgment in his docket, but left it undated. On February 15, he received a letter from Waters saying, ''Ollie Beck has not paid his poll tax so you render judgment on your docket for $2 for poll tax and costs of suit, make the judgment so it will be with your extension taken to Feby. 4, '08. I send you a copy for your docket entries so you get it on your docket immediately so McKee will not try to say we waited a month after the time to render judgment before it was docketed. Please attend to same and send me a subpoena for witnesses in case of City v. Frank Reynolds set for March 3rd, '08, for John Clair,'' etc. Waters testified that he wrote this letter in response to an inquiry from the justice as to how to date the judgment. The ''copy'' mentioned in the letter was a form of judgment. The justice testified that when he received it he merely changed two or three words in the judgment as already written in the docket and inserted the date. He also testified that before receiving the letter from Waters he had been in South Gorin and informed several people that judgment had been rendered against Beck. Waters also testified that within a week after February 4, and within the time that Beck should have appealed he, Waters, told the postmaster, in Beck's presence, of the rendition of the judgment. The postmaster corroborated this testimony to some extent.

CAULFIELD, J. (after stating the facts).—There was considerable testimony in the case but we think the foregoing fairly represents the state of the record

so far as it bears on the question before us. That question which counsel for appellant calls "the crucial question," is, did the attorneys for the parties agree that all the poll tax cases were to be continued from February 4 to March 3, or did they agree that the Beck case was to be decided, and only the other cases continued. If the trial court had accepted plaintiff's version of such agreement then it should have enjoined the judgment rendered in violation thereof. [Sanderson v. Voelcker, 51 Mo. App. 328; 16 Am. and Eng. Enc. of Law (2 Ed.), 381.] But the testimony as to the agreement was conflicting and the trial court, having the witnesses present and testifying orally before it, with opportunity to judge of the weight to be attached to their testimony, found this issue against the plaintiff. We have carefully examined the record and are not satisfied that such finding was so manifestly wrong as to warrant us in disturbing it. We feel therefore that it is our duty to affirm the judgment. [Tinker v. Kier, 195 Mo. 183, 203, 94 S. W. 501; Huffman v. Huffman, 217 Mo. 182, 191, 117 S. W. 1.] It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.