## WASHINGTON et al. vs. LOVE.

34 93
70 106

1. REPLEVIN. MORTGAGE : *For part of undivided crop.*

Washington rented land from Jones, agreeing to give one-fourth of the cotton produced on it, for rent. He afterward mortgaged to Love three bales of the cotton to be produced on the farm, to secure a debt payable the first of November following, with power to take possession and sell, upon default of payment. After this mortgage was executed and recorded, he made another mortgage, to Deutsch, upon the whole crop, to secure indebtedness to him ; and Jones, being indebted to Deutsch, gave him power of attroney to collect the rent, and apply it to his indebtedness. Washington raised and gathered eleven bales. Deutsch got about eight bales, leaving in a pen on the premises about three bales. Love demanded this under his mortgage. Soon afterward Deutsch, with Washington's assent, moved this cotton to a gin to be ginned. Love then brought replevin against Washington for "three bales of cotton, valued at $90," and the officer seized it at the gin. Deutsch interpleaded for the cotton, alleging that "he was the owner, and entitled to the immediate possession;" and was also, on his motion, made defendant. Washington made no defense *Held:*

1. The contest for the cotton was between Love and Deutsch, and Love was entitled to the verdict on the interplea.

2. The eight bales, being more than sufficient to pay the rent, which was the first lien, Deutsch had no right of possession against Love, his *mortgage* being subsequent to Love's.

3. While the cotton was undivided on the premises, and the three liens upon it, Love could not maintain replevin for three bales, or as much as would make three bales, for he had no title to any particular part of the undivided crop. He should have sued in equity, making the three others parties. But after all but three bales had been taken away, he could, under the circumstances, maintain replevin for the remainder.

---

Washington et al. vs. Love.

---

2. REPLEVIN: *Not avoided by transfer of possession.*
A party in possession of goods can not avoid replevin by wrongfully transferring the possession to another.

3. PRACTICE IN SUPREME COURT: *No reversal where justice is done.*
Where substantial justice has been done in the circuit court, the supreme court will not reverse for matters of form.

APPEAL from *Jefferson* Circuit Court.
Hon. J. A. WILLIAMS, Circuit Judge.
*N. T. White,* for appellant.
*T. B. Martin,* contra.

ENGLISH, C. J.   On the fifteenth of January, 1877, T. C. Love brought replevin before a justice of the peace of Jefferson county against Samuel Washington, "for three bales of cotton, valued at $90," and a *skew-bald* mare.

On the execution of bond by plaintiff, the constable took into his possession, as he returns upon the writ, "seed cotton sufficient to make three bales of cotton, and the mare described within."

The property was seized on the day the writ issued (the fifteenth of January), and was bonded by Washington, Charles Deutsch and J. B. Core becoming his sureties in the bond.

On the twenty-fifth of January, the return day of the writ, Deutsch, by permission of the justice, filed a sworn interplea, alleging that he was the owner of the cotton, and entitled to the immediate possession thereof; and that neither plaintiff Love nor defendant Washington had any legal title thereto, or ownership thereof. He was also, upon his own application, made a defendant in the suit.

On the trial before the justice, the right of plaintiff to the mare was conceded, and the contest was as to the cot-

ton, for which plaintiff recovered judgment, and Deutsch appealed to the circuit court, where the appeal appears to have been treated as if taken for both defendants.

The cause was submitted to a jury on the twelfth of December, 1877, and the jury returned a verdict that the plaintiff was entitled to the possession of the three bales of cotton, and fixed the value thereof at $135, and assessed plaintiff's damages at $15.

Judgment was rendered against defendants for the three bales of cotton; or, if not delivered, the value fixed by the jury, and for the damages assessed, etc.

A motion for a new trial was filed, on several grounds, and among them, that the verdict exceeded the amount claimed in the affidavit, and the court ordered a credit of $45 to be entered on the judgment, and overruled the motion for a new trial; and defendant took a bill of exception, and appealed to this court.

On the trial, plaintiff Love testified that, in the fall of 1875, he sold defendant Washington a horse for $112, and on the eighteenth of March, 1876, took a mortgage to secure the debt, and the mortgage was read in evidence.

By it, Washington conveyed to Love "one sorrel skewbald mare, fifteen hands high, and eight years old; also, three bales of cotton, to weigh about five hundred pounds each, to be raised by me (Washington) the present year (1876), upon the farm known as the Parson Jones place, in Jefferson county, Arkansas," to secure the payment of a note for $102.50, executed by him to Love, about the first of December, 1875, payable the first of November, 1876, with power to Love to take possession of the property on default of payment, and sell it on public notice. The mortgage was recorded the twenty-ninth of March, 1876.

Love further testified that, about ten days before the

issuance of the writ of replevin, he called on Washington, and demanded payment of the debt; that the cotton in controversy was then in his pen on the Jones place, where it was raised; that he agreed to give him the cotton in payment, or part payment, of the debt.

He returned to the Jones place six or eight days afterwards, and the cotton was gone. Washington told him that a clerk of Deutsch had come there with Deutsch's wagon and hauled it off. He went to Pine Bluff, brought this suit, and accompanied the officer, who executed the writ. They found the cotton in the gin of J. B. Core, about five miles from the Jones place. He estimated the value of the cotton taken by the officer at $90, and his damages at $15.

After he replevied the skew-bald mare, he sold her, under the power in the mortgage, for $38, and credited the note with $17, the balance remaining, after deducting expenses and costs.

J. H. Jones testified, in substance, that he and his brother, B. M. K. Jones, owners of the Parson Jones place, rented the land to Washington for the year 1876, and he was to pay them in money for corn land, and one-fourth of the cotton as rent for all the land cultivated by him in cotton.

That Washington raised, in all, eleven bales of cotton, and the cotton in controversy in the suit was in his pen when plaintiff, Love, was up to see him, and was the last of his crop, and that defendant, Deutsch, had gotten all the rest of his cotton.

That the cotton in controversy was taken from the place for Deutsch by his agent, by virtue of witness and his brother being landlords. They had not received one-fourth of this cotton. They had become indebted to Deutsch for supplies, and witness afterwards found their account cred-

ited with $32, as their share of the cotton in controversy. Deutsch was authorized by them to collect the rent of Washington.

*James Y. Saunders* testified that he took the cotton from the Jones place for Deutsch, by his orders, and hauled it to the Core gin, where it was found by the officer when replevied.

CHARLES DEUTSCH testified, in substance, that Washington became indebted to him for supplies to make his crop, and gave him a mortgage, which was read in evidence.

The mortgage bears date the twenty-ninth of April, 1876, and by it Washington conveys to Deutsch some stock and his entire crop of corn and cotton, then raising and to be raised on the Jones place, to secure an indebtedness of $200, more or less, for goods, wares, merchandise and supplies furnished and to be furnished him by Deutsch, payable on or before the first of November, 1876, with power to Deutsch to take possession of the property, on default of payment, and sell it to pay the debt, etc. The mortgage was recorded the twenty-ninth of May, 1876.

Deutsch further testified that the Jones brothers, landlords of Washington, had also become indebted to him for supplies, and to secure payment for them, as well as for other supplies afterwards furnished them by him, they executed to him, on the twenty-third of December, 1876, a power of attorney to collect their rent of Washington, which was read in evidence.

By this instrument, Jones brothers appointed Deutsch their agent, and authorized him to collect for them and in their names, all rent due, or to become due, from Washington to them, for land occupied by him during the year 1876, and, when collected, to apply the proceeds thereof to any and all debts owed by them to Deutsch, and Wash-

ington was thereby authorized to pay to him the part of the crop coming to them for rent, and the receipt of Deutsch therefor was to be as valid and binding as if executed by them.

Deutsch further testified that, after the cotton was picked, Washington turned it over to him to pay the part of the crop agreed to be received as rent, and the remainder toward paying his account. That he sent Saunders with the wagon to get the cotton, and he got it and took it to Core's gin to be ginned, where it was when the officer replevied it. That Washington was still due him for supplies secured by the mortgage.

Washington testified, in substance, that he rented land of the Jones brothers, and was to pay them money rent for land worked in corn, and for all land cultivated by him in cotton, they were to receive one-fourth of the cotton for rent. That the cotton in controversy in this suit was raised by him under this contract. That he executed both mortgages read in evidence, one to Love and the other to Deutsch. That he raised, during the year 1876, eleven bales of cotton, including the bales replevied. That defendant, Deutsch, received all the cotton raised by him during the year, for the purpose of paying the one-fourth for rent, and the balance to be applied in payment of his supply account. Witness knew that he had authority to collect the rent, etc. At the time he turned over to Deutsch the cotton afterwards replevied in this suit, neither Jones brothers or Deutsch had taken out their fourth for rent, but the cotton was still undivided. Witness never agreed with Love to deliver this cotton, in payment of the indebtedness he held against him, secured by his mortgage. The cotton replevied was the last of the crop raised by witness during the year 1876, and was

Washington et al. vs. Love.

turned over by him to Deutsch, for the purposes aforesaid, about four days before the institution of this suit. Love came to witness and inquired about the cotton, and he informed him that he had turned it over to Deutsch, for the purpose of taking his share due for rent, and the balance to be applied toward paying the indebtedness of witness to him. When the process was served on witness, Deutsch was in possession of the property, and had been for four days.

The plaintiff moved six instructions. The defendants objected to each of them, except the sixth, but the court gave them all. The five objected to are as follows:

"1. This being an action of replevin, the only question for the jury to determine is as to the right to the posses sion of the property in controversy, and if the jury believe, from the evidence, that plaintiff was entitled to possession of the cotton at the time of the commencement of the suit, they will find for plaintiff.

"2. If the jury believe that the mortgage from Washington to plaintiff provides that if payment of the debt therein mentioned is not made on a certain day, then plaintiff might take charge of the property mentioned therein ; and that, if the said debt was not paid at the time mentioned, plaintiff's right to possession is clear, unless there is an older mortgage than plaintiff's remaining unsatisfied, or other superior right of possession.

"3. A landlord has only a lien on the crop raised on the rented land, which lien may be enforced in the manner provided by law, and the landlord has no right to possession of the crop, in the event of the failure of the payment of rent, but must enforce his lien by attachment, if he desires to subject the crop raised on such land.

"4. If the jury believe, from the evidence, that plaintiff

had the first dated and first recorded mortgage on the cotton in controversy in this suit, and that the same was due and not paid, at and before the commencement of this suit, no turning over or delivery of the cotton by the defendant to any other person could defeat the claim of plaintiff thereto.

" 5. If the jury believe, from the evidence, that Charles Deutsch received the cotton in controversy herein from defendant, Washington, with the understanding that Deutsch was to sell the same and then pay Jones brothers their rent, and apply the balance to his debt against Washington, and that Jones brothers were parties to such agreement, then Deutsch received the cotton as the trustee and agent of Washington, and in that case it makes no difference whatever as to where the cotton was, as the possession of Deutsch was, in law, the possession of Washington."

The defendant moved six instructions, and the court refused the third, fifth and sixth, and gave the others.

Those refused are as follows:

" 3. By the law of this state the writ of replevin issues to enforce the claim of an owner of property for its delivery to him by one who wrongfully detains it, but it confers no authority on the officers to seize property which is not actually or constructively in the possession of the party named in the process, and when the property is taken from the possession of a third party, the process will not justify the taking, although it be the identical property described therein.

" 5. If the jury find, from the testimony, that plaintiff held a mortgage on three bales of cotton against defendant, Washington, and that Washington made eleven bales of cotton by his crop, and that the said three bales so mort-

gaged had never been set apart or designated as the cotton embraced in said mortgage, then plaintiff can not maintain this action.

"6. A mortgage on three bales of cotton out of a crop of eleven bales of cotton, although it may create an equitable interest in favor of the mortgagee, will not be sufficient in itself to authorize the bringing and maintaining an action at law, unless the said three bales of cotton have been identified or set apart as the cotton intended to be covered by the mortgage; and if the jury find, from the testimony, that the said cotton had not been set apart and identified, and agreed that it should be embraced in said mortgage, they will find for defendants."

I. Deutsch placed himself in the double attitude of interpleader for the cotton and defendant in the main suit. Although, in bonding the cotton, when seized by the constable, Washington was put in front of the battle, and kept there, he set up no claim to the cotton, and had really no interest in the result of the suit, except to save himself harmless on his bond. The contest for the cotton was between Love and Deutsch, both his creditors, and both claiming under mortgages executed by him.

Deutsch failed to establish the allegations of his interplea: he did not prove that he was the owner of the cotton and entitled to the immediate possession thereof, as against Love.

The mortgage of Love was executed and recorded before Deutsch obtained his, and of course the title of the senior mortgagee is superior to that of the junior.

Upon the facts disclosed upon the trial, Deutsch derived no title to the cotton in controversy, from or through the Jones brothers, that was superior to or displaced the title of Love.

Washington was the tenant of the Jones brothers, and they had the first lien upon his cotton crop for rent, which by contract, was one-fourth of the cotton.

Love had, by his mortgage, the second lien upon the cotton crop to the extent of three 500-pound bales.

Deutsch had, by his mortgage, the third lien to the extent of his debt for supplies.

Washington raised eleven bales of cotton.

On the twenty-third of December, 1876, Jones brothers gave Deutsch a power of attorney to collect of Washington the fourth of his cotton crop due them for rent, and put the proceeds to their credit. By virtue of this power, and under his own mortgage, he induced Washington to turn over to him his entire crop of cotton, amounting to eleven bales.

About four days before this suit was commenced, Washington had still in his pen the cotton in controversy, about three bales, and the last of his crop. This remnant Love demanded, under his mortgage, and testified that Washington agreed to let him have it, which the latter denied. Be this as it may, after Love made the demand, Deutsch sent his wagon for the cotton, and had it taken to Core's gin. By what right did he so take this cotton? Not, certainly, to satisfy the claim of the landlord for rent, for he had before then received of Washington as much as eight bales of his crop, which greatly exceeded a fourth of the cotton; so, he then had in his hands largely more than the share of the landlord, whose agent he claimed to be, and to whom he was obliged to account. Nor could he rightly take the last three bales of the crop under his own mortgage, and leave none for Love, whose claim upon as much as three bales was prior and superior to his.

True, the landlords' fourth might not have been taken

out of the particular cotton in controversy, at the time Deutsch had it hauled from the premises, but their share of the whole crop was one-fourth, and it is manifest, from all the facts in evidence, that Deutsch had received, as their agent, or in trust for them, more than their share— eight bales; beyond dispute, is more than the fourth of eleven bales.

If, therefore, the trial had been on the interplea of Deutsch, and not in the main suit against both Washington and Deutsch, as defendants, the verdict and judgment on the interplea should have been for plaintiff, Love.

II. The court below refused to instruct the jury, in effect, that Love could not maintain replevin on the facts of the case, and that his only remedy was in equity. While Washington's cotton crop was on the premises, where it was produced, and undivided, with the three liens upon it—the landlords' for rent, the mortgage of Love and the mortgage of Deutsch—Love could not have maintained replevin for three bales of the crop, or as much cotton as would make thre e bales, for he had no title to any particular part of the undivided crop. *Hall v. Robinson, 16 Ark., 90.* His only remedy would have been to file a bill in equity to foreclose his mortgage, making Washington and his landlords defendants, and Deutsch, the junior mortgagee, would have been a proper party. In such a suit, the rights of all the parties could have been ascertained and settled. And it would have been the better practice for him to have filed a bill upon the facts existing when he brought this suit: but could he have maintained replevin at all?

When he called on Washington for payment, a few days before bringing the suit, he found that all of his crop had been disposed of and removed from the premises but three bales, or enough to make three bales. Who

could have objected to his taking peaceable possession of this remnant of cotton—the last of the picking—all of the crop that was left—and selling it to satisfy his mortgage ? Not Washington, because the law day of the mortgage had transpired, and Love was empowered by the mortgage to take possession of the property embraced in it, and sell it, on default of payment. Not the landlords, for they had already received, through their agent, Deutsch, one-fourth of the whole crop, which was their share for rent. Not Deutsch, for his mortgage was junior and inferior to Love's. If, therefore, Love, under such circumstances, could legally have taken possession of the remnant of the crop, and sold it, under the power in his mortgage, to satisfy his debt, we can see no good reason why he might not obtain possession of it, by replevin, for the same purpose, on refusal of Washington to surrender it. *Jarratt et al. v. McDaniel et al., 32 Ark., 595.*

III. A few days before this suit was commenced, Deutsch, by consent of Washington, removed the cotton in controversy from Washington's pen, on the Jones place, to Core's gin, where the constable found it and took it into his custody, under the writ of replevin. The court below refused to instruct the jury that the officer had no authority to seize the cotton, because it was not in the actual possession of Washington.

A party in possession of goods can not avoid replevin, by wrongfully transferring the possession to another. *Nichols v. Michael, 23 New York, 266.*

In this case, the ginner was in the actual possession of the cotton when the suit was commenced, and it is of no consequence to determine whether Washington or Deutsch had constructive possession. Both of them were defendants. Washington by the act of Love, and Deutsch by his own voluntary act. *Ib.*

Substantial justice having been done by the court below, upon all of the facts of the case, we are not disposed to reverse the judgment on matters of form and drive the parties to the expense of transferring the suit to the chancery side of the court, amending their pleadings and litigating the matter over again.

The sum in controversy is too small for so much trouble. Deutsch got very near the lion's share of the cotton, leaving in Washington's pen not more than Love was entitled to under his mortgage, and then attempted to deprive him of that.

The value of the cotton alleged in the complaint was matter of form (*Baily v. Ellis, 21 Ark., 488*), but the court, by reducing Love's recovery to $90, left him enough, perhaps, with the proceeds of the sale of the horse, to pay his debt.

Upon the whole record, the judgment must be affirmed.