MONTAGUE *v.* CRADDOCK.

Opinion delivered March 12, 1917.

1. JUDGMENTS—PETITION TO VACATE.—A judgment or decree may, under Kirby's Digest, § 4431, be vacated or modified for fraud or mistake in its procurement, in a proceeding instituted for that purpose in the court in which it was rendered.

2. JUDGMENTS—PETITION TO VACATE—MATTERS TO BE SET OUT.—A party moving to set aside a judgment or a decree rendered against him by default must state his defense and make a *prima facie* showing of merit in order that the court may determine whether he is injured by not being permitted to have the benefit of it.

3. MORTGAGES—RECORD—SUFFICIENCY.—To secure a party his full rights under the State's registry laws, the substantial act to be done is to take the mortgage and cause it to be placed on file for record in the office where such instruments are to be recorded, and when this is done and the mortgage is received by the officer for record, this

is sufficient to effect with notice all who subsequently deal with the property.

4.    JUDGMENTS—PETITION TO SET ASIDE—SHOWING OF MERIT.—The party asking that a default decree of foreclosure of a chattel mortgage be set aside, shows merit in his petition when he shows himself to be the holder of a mortgage lien upon the same property, and prior to the lien forclosed.

5.    JUDGMENTS—WILL BE SET ASIDE, WHEN.—Where by mistake or fraud a party has gained an unfair advantage in proceedings in a court, which must operate to make that court an instrument of injustice, courts of equity will interfere and restrain him from reaping the fruits of the advantage thus improperly gained.

6.    JUDGMENTS—WHEN SET ASIDE—EQUITABLE RELIEF—AGREEMENT TO CONTINUE.—In the application of the principle stated in No. 5, *supra,* an injunction will be granted against a judgment taken in violation of an agreement to continue the case, where there is a good defense to the action.

Appeal from Craighead Chancery Court, Eastern District; *Charles D. Frierson,* Chancellor; reversed.

*Baker & Sloan,* for appellant.

1. Montague's mortgage was prior in time and duly filed for record with the proper officer and the fee paid. If the recorder failed to record it, or to properly index it or record it, the lien is not affected thereby. 28 Ark. 244; 43 *Id.* 144; 59 *Id.* 280, 291; 69 *Id.* 114, 118. Priority as between two chattel mortgages is determined by the record or the filing thereof. *Murray Co.* v. *Satterfield,* 125 Ark. 85.

2. Needham was a resident of the Western District and the mortgage to appellant was properly filed there. The mortgage to Craddock and Stotts was not filed in the proper district, and was not a lien on the horses. The court had no jurisdiction. Act 61, Acts 1883. The decree was a nullity. Consent can not give jurisdiction. 33 Ark. 31. The complaint determines jurisdiction. 70 Ark. 260; 123 *Id.* 40.

3. At least a legal fraud was perpetrated by taking judgment without notice. Appellant had no notice; he relied on the statements of attorney and had a valid defense. The decree should have been vacated.

*Lamb, Turney & Sloan,* for appellee.

1. The court did not err in dismissing the bill of review. 21 Ark. 528.

2. If appellant had any remedy, it was by motion to set aside the orignal decree. He was not misled by any statements or acts of attorneys. No agreement was made or shown.

3. The court had jurisdiction of the subject-matter and parties. Acts 1893, 90.

STATEMENT BY THE COURT.

W. S. Montague filed what he terms a bill of review in the chancery court against William Craddock and Taylor Stotts and others to vacate and set aside a decree which had been entered in the same chancery court on October 11, 1915, in an action wherein William Craddock and Taylor Stotts were plaintiffs and Andrew W. Needham, W. S. Montague and others were defendants. The material facts are as follows:

On the 3d day of May, 1915, A. W. Needham executed a mortgage to W. S. Montague and his partner on real estate and on a pair of horses, to secure them for the sum of $325, and the mortgage was filed for record in the recorder's office for the Western District of Craighead County, Arkansas. The land was situated in that district, and Needham, at the time, resided at Nettleton, which was in the Western District of the county. Needham has never paid the mortgage debt. Soon after the execution of the mortgage to Montague and his partner, Needham went to Lake City for the purpose of going into the timber business.

On the 21st day of June, 1915, A. W. Needham executed his note to the Bank of Lake City for $150, due in sixty days, with William Craddock and Taylor Stotts as sureties; and to secure Craddock and Stotts, he gave them a mortgage on land situated in the Western District of Craighead County. He also gave them a chattel mortgage upon two horses, being the same two horses which he had previously mortgaged to Montague. This

mortgage was filed for record in the recorder's office in the Eastern District of Craighead County. Craddock says that Needham was residing there at the time and told him that was his permanent residence. Needham says that he resided in the Western District of the county and was only in the Eastern District temporarily for the purpose of working on the timber contract.

Craddock and Stotts instituted an action in the chancery court in the eastern district of Craighead County against A. W. Needham, W. S. Montague and others, to obtain judgment for the $150, which they allege they had paid to the Bank of Lake City for Needham when his note became due. They asked for a foreclosure of the mortgage on the real estate and also the mortgage on the horses.

A decree was entered of record in the case on October 11, 1915. The decree recites that it was heard upon an agreed statement of facts, the substance of which is stated in the decree. The court found that it was a proceeding to foreclose a mortgage, and that prior to the time of the execution of the mortgage by A. W. Needham to William Craddock and Taylor Stotts, that Needham had executed a mortgage upon the real estate described in the complaint to other persons who had been made defendants in the action, and that this mortgage was a prior lien to that of Craddock and Stotts. The court also found that Needham had executed a mortgage on the horses in question to W. S. Montague and his partner which was prior, in point of time, to the mortgage executed on the horses to Craddock and Stotts. The court further found that the mortgage on the horses to Craddock and Stotts was a superior lien to the mortgage on the horses executed by Needham to Montague; that Craddock and Stotts had discharged the debt of Needham to the Bank of Lake City in the sum of $150 and the accrued interest. Judgment was rendered in favor of Craddock and Stotts and foreclosure of their mortgage on the horses was decreed.

As above stated, Montague subsequently obtained permission and filed what he called a bill of review to va-

cate this decree. The facts above stated were shown on the trial of the case, and it was also shown that the decree in the original case was taken by default.

William Craddock testified that he heard a conversation between Judge Walker, his attorney, and Basil Baker, attorney for Montague; that in the conversation Baker brought up the fact that Montague was feeling sore toward him for having drawn up a mortgage on the same horses that Craddock and Stotts had a mortgage on; that there was no agreement between his attorney and Baker in regard to the presentation of the case to the chancellor in vacation.

Basil Baker stated that the judgment of October 11, 1915, was at an adjourned term of the chancery court, and that he had, before that time, had a conversation with Judge Walker about the case in Mr. Craddock's office; that part of the conversation was in the presence of Mr. Craddock; that he did not make the statement testified to by Mr. Craddock, but did say that Mr. Montague had found some fault with him for the reason that he thought Baker ought to have discovered a former mortgage held by Heath and other parties; that the date of Montague's mortgage showed that it was prior in point of time to the mortgage of Craddock and Stotts, and that Craddock knew of that fact; that he told Judge Walker that he did not believe the chancery court for the eastern district had jurisdiction, because he had brought into court a foreclosure of real estate situated in the western district of the county; that he advised Judge Walker that the case could be taken up at some day that would be agreeable to Walker; that he assumed that on any occasion Judge Walker might wish it they would take up the case; that there was no agreement as to any state of facts upon which the case would be tried; that he did not know the case was going to be presented at the time it was presented; that he was not present at court at the time the case was heard, and that he did not stay away from court because he wished to delay the hearing of the case.

W. S. Montague testified that he had purchased the interest of his former partner in the mortgage; that the mortgage was given to him for the purchase price of the horses, and that no part of it had been paid; that the only agreement he had ever made with Judge Walker was to the effect that anything his attorney did would be satisfactory to him; that he did not know anything about the case being heard when it was heard, and understood that it would not be taken up except upon an agreement between Judge Walker and his attorney; that no agreed statement of facts had been made in the case. Other facts will be stated or referred to in the opinion.

The court denied relief to Montague and confirmed and entered the former decree in the case. From the decree dismissing his petition Montague has appealed to this court.

HART, J. (after stating the facts). (1) Counsel for the plaintiff, Montague, filed what they termed a bill of review, but it was, in effect, a motion under section 4431, of Kirby's Digest, after the expiration of the term, to vacate the decree. The evidence shows that the original decree was not based upon an agreed statement of facts, as it purports to be, but that it was in reality a decree by default. A proceeding seeking the vacation of a default judgment or decree is warranted by section 4431, of Kirby's Digest, and such judgment or decree may be vacated or modified for fraud or mistake in its procurement in a proceeding instituted for that purpose in the court in which it was rendered. *Norman* v. *Cammack,* 105 Ark. 121, and *Dale* v. *Bland,* 93 Ark. 266. Hence it will be readily seen that the petition to vacate the judgment in the present action was more properly a proceeding under section 4431, of Kirby's Digest, and it will be so treated.

(2) A party moving to set aside a judgment or a decree rendered against him by default must state his defense and make a *prima facie* showing of merit in order that the court may determine whether he is injured by not being permitted to have the benefit of it. *Citizens Bank of Lavaca* v. *Barr,* 123 Ark. 443.

The record in the present case shows that the mortgage of Montague was prior, in point of time, to that of Craddock and Stotts. The same pair of horses was included in both mortgages. The mortgage to Montague was executed and filed for record more than a month before the mortgage to Craddock and Stotts was executed. Montague deposited the mortgage in the recorder's office of the district of Craighead County in which Needham at the time resided. It is claimed that the mortgage was recorded on the record for real estate mortgages, and for that reason was not notice to subsequent purchasers. We need not decide that question, for the mortgage was filed in the proper office for record.

(3-4) To secure a party his full rights under our registry laws, the substantial act to be done is to take the mortgage and cause it to be placed on file for record in the office where such instruments are to be recorded, and when this is done and the mortgage is received by the officer for record, this is sufficient to effect with notice all who subsequently deal with the property. *Oats* v. *Walls,* 28 Ark. 244, and *Case & Co.* v. *Hargadine,* 43 Ark. 144. The mortgage to Montague was to secure the purchase price of the horses embraced in it, and the mortgage debt has not been paid. This makes a showing of merit and brings us to the question of whether or not the decree should be set aside for fraud or mistake in its procurement.

(5-6) We think it sufficiently appears from the testimony of Baker that he was misled by the statement of Judge Walker, who was the attorney for Craddock and Stotts. He had a right to assume from his version of their conversation, that the case would not be taken up without notifying him. It appears that he thought that the court had no jurisdiction because an attempt was made to foreclose in the same action a mortgage on real estate which was situated in another district in the same county. He says it was understood that he should be notified when the case was to be taken up and did not appear at the adjourned term because no depositions had been

taken by either party, and he relied upon his understanding that the case would not be taken up without notice to him. He stated that Craddock was only present during a part of the conversation that he had with Judge Walker. Judge Walker was not a witness in the case, and there is nothing to contradict the testimony of Baker. It is true Craddock contradicted his testimony in regard to some other matters which occurred during the conversation, but we do not think there is any contradiction of Baker's testimony with regard to the postponement of the trial. There was no negligence on his part in placing reliance upon the statements made to him, and while we do not think that any fraud was intended to be practiced upon Montague, the result was that Montague was deprived of his right to appear and defend the action, and this constituted a fraud in law. This principle has been recognized in the case of *Lawson* v. *Bettison,* 12 Ark. 401. Relief against fraud in judgment and decrees has also been recognized as a ground for equitable jurisdiction. Where by mistake or fraud a party has gained an unfair advantage in proceedings in a court which must operate to make that court an instrument of injustice, courts of equity will interfere and restrain him from reaping fruits of the advantage thus improperly gained. In the application of the principle, an injunction will be granted against a judgment taken in violation of an agreement to continue the case, where there is a good defense to the action. *Beams* v. *Denham,* 2 Ill. 58; *Moore* v. *Lipscombe,* 82 Va. 546; *Sanderson* v. *Voelcker,* 51 Mo. App. 328; *Brooks* v. *Twitchell,* 182 Mass. 443, 94 A. S. R. 662; see, also, 15 R. C. L. sec. 217, p. 766.

It follows that the court erred in not vacating the decree in the original case. For that error the decree will be reversed and the cause remanded for further proceedings in accordance with this opinion.