## WILLIAMS *v.* ROAD IMPROVEMENT DISTRICT No. 1.

### Opinion delivered December 1, 1924.

1. EQUITY—SUFFICIENCY OF EVIDENCE TO SUSTAIN DECREE.—In a suit to review a decree in a suit by a contractor against a road improvement district, evidence *held* to sustain finding that the decree was the result of collusion.

2. EQUITY—DECREE OBTAINED BY COLLUSION.—Where new road district commissioners did not know of a settlement between former commissioners and the contractor constituting a complete defense to a suit by the contractor against the district, and had no opportunity to present it when the cause was heard before the chancellor in vacation a few days after their appointment, a decree against the road district obtained by collusion between the contractor and the former commissioners was properly set aside.

Appeal from Perry Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*G. B. Colvin,* for appellant.

1. If the finding, viz., that "the commissioners entered into collusion with said G. B. Williams in obtaining said decree," is supported by a preponderance of the evidence, that in itself would not be ground for setting aside the judgment, unless a valid defense is alleged and proved. C. & M. Digest, § 6292; 120 Ark. 255; 108 Ark. 415.

2. If the second finding, viz., that "there was in fact compromise and settlement had between the district and G. C. Williams," is also supported by a preponderance of the evidence, that would be ground for setting aside the judgment only in the event such compromise and settlement included all of the matters upon which the original suit was founded and judgment obtained. There are certain elementary rules governing compromise and settlement, without which it cannot be had. 12 C. J., p. 316, § 6; *Id.* p. 317, § 9; *Id.* p. 321, § 14; *Id.* p. 339, § 33; *Id.* p. 341, § 36. A compromise agreement is conclusive only as to those matters which the parties have fairly intended to include within its terms, and the necessary consequences thereof. Fraud will not be presumed, and, in order to entitle the complaining party to relief, the proof thereof must be clear and satisfactory, and that means something more than a mere preponderance. 92 Ark. 509. The fraud must consist in the procurement of the judgment, and not in the original cause of action. 75 Ark. 415; 124 Ark. 278; 133 Ark. 97. A judgment will not be set aside for defendant's own lack of diligence. 93 Ark. 462; 122 Ark. 74; 114 Ark. 493.

*J. H. Bowen* and *Edward Gordon,* for appellee.

There can be no doubt, after referring to the testimony of Williams himself and to the facts and circumstances in evidence, that the old commissioners entered into collusion with appellant to defraud the district; and there can be no doubt that the commissioners and their attorney collusively declined or failed to take testimony or present the defense of the district, notwithstanding they knew the district had a valid defense. C. & M. Digest, § 6290; 15 R. C. L. 706, § 158. A judgment collusively obtained can be set aside at the instance of the defrauded party, even in a collateral proceeding. 65 Ark. 566; 128 Ark. 59; 25 Ark. 556-57-58.

HUMPHREYS, J. This is an appeal from a decree rendered in a case wherein appellant, G. C. Williams, was plaintiff, and appellee, Road Improvement District No. 1

of Perry County, Arkansas, was defendant, setting aside
a vacation decree of date March 25, 1921, in favor of
appellant against appellee, for $20,618.82, which was
entered *nunc pro tunc* on the 21st day of September, 1922.
The vacation decree was rendered by Chancellor Jordan
Sellers, pursuant to an agreement between the parties to
the effect that he might hear and decide the case at cham-
bers, in Morrilton, and send the decree to the chancery
court of Perry County for entry in a blank space left on
the record for that purpose. A few days before he heard
the case, the General Assembly of Arkansas removed the
old commissioners of the appellee district and appointed
three new ones in their place. The new commissioners
made an attempt to postpone the hearing at chambers in
Morrilton, but without avail. Immediately upon their
appointment they discharged the attorneys who had been
representing appellee, under employment by the old
commissioners. After failing to procure a postponement
of the case, they retired, and did not participate there-
after in the hearing. The chancellor tried the case, in
their absence, upon the pleadings and proof brought
before him, and rendered a decree for the sum aforesaid
in favor of appellant against appellee, but did not reduce
the decree to writing until July 1, 1921. In the mean-
time, and before reducing the decree to writing, the chan-
cellor resigned, and moved to El Dorado. On July 1,
1921, he mailed the decree from El Dorado to the chan-
cery clerk of Perry County, with instructions to file same
with the papers in the case, objection having been made
by the new commissioners to the entry of the decree. The
suit in which said decree was rendered grew out of a con-
tract between appellant and appellee for constructing a
highway about twenty-six miles long. The money of the
district gave out before the road was completed, and the
old commissioners were unable to proceed with the work
unless Federal or State aid could be obtained, which was
doubtful. At the time the money gave out and the work
ceased, the contractor, appellant herein, had considerable
material on the ground, and had sublet the ungraded

portion of the road to responsible subcontractors at a profit. Being confronted by this situation, the old commissioners and the contractor had several meetings for the purpose of adjusting matters between them. At a meeting on August 11, 1920, the contractor made a proposal to the old commissioners, in the form of a letter, which was incorporated in the minutes of the meeting. The minutes of the meeting, including the letter, are as follows:

"Minutes of meeting of Road Improvement District No. 1, held in the office of J. T. Chafin, at Perry, Arkansas, August 11, 1920. Commissioners present, D. M. Wallace, A. F. Leigh and J. T. Chafin. Attorneys, G. B. Colvin, J. H. Bowen and J. L. Hill. Contractors, G. C. Williams and R. L. Gastor.

"The commissioners had convened at the call of the chairman for the purpose of settling with contractors. After considerable discussion the following agreement was reached with Mr. Williams, general contractor:

" 'Perry, Ark., Aug. 11, 1920.

" 'Commissioners of Road Improvement District No. 1, Perry, Arkansas:

" 'Gentlemen: In closing my contract with you I hereby agree that you may take over the following materials now on hand, at prices stipulated herein, crediting me with the amount of same when same is ascertained by estimate of the engineers:

Sand ............................................................$10.00 per yard
Crushed rock ........................................... 6.25 per yard
Cement ..................................................... 5.60 per bbl.
Damage to lumber...............................290.00
Steel at invoice price.

" 'Final estimate to be furnished at once by all parties, including myself.

" 'As soon as my final estimate is made up and agreed upon, as partial settlement of same, I hereby agree to accept valid certificates of indebtedness of the

district, not to exceed $3,000, drawing 6 per cent. interest, balance to be paid in cash.

> " 'Very truly yours,
> " '(Signed) G. C. WILLIAMS.'

"The following resolution was offered by J. T. Chafin:

" 'Resolution: Whereas, the district has on hand culvert material that will not be used by reason of the fact that the road building cannot be continued, and whereas, it is advisable to sell said culvert in order to raise funds with which to pay obligations of the district already incurred.

" 'Therefore be it resolved, that said culvert material be sold to R. L. Gastor at the present market price, as submitted by Dixie Culvert Company, said price to be f. o. b. Beebe, Arkansas, freight and loading charges to be deducted. That said R. L. Gastor be and he is hereby authorized to load said culverts and invoice same under directions of the engineers of the district. Terms of sale, net cash, 30 days.

" 'Be it further resolved, that the reenforced steel unused and belonging to the district be sold to R. L. Gastor at $4.25 per 100 lb. at Perry. Terms, net cash.'

"On motion of A. F. Leigh, seconded by J. T. Chafin, the above resolution was adopted.

"The engineers were instructed to make a final account of all material on hand, and render a final estimate at the earliest possible date.

> "(Signed) D. M. WALLACE, Chr.
> "J. T. CHAFIN, Secy.
> "A. F. LEIGH."

Pursuant to and in accordance with the minutes aforesaid, the resident engineer, J. C. Spotts, as representative of the district, and Parkes Engineering Company, who was the engineer for the district, made a final estimate, showing the amount due from the district to the contractor. This estimate was the eleventh estimate which had been made during the progress of the work, and bore that number. In making up the estimate the

engineer allowed the district $3,100 out of retained percentage, which amount the district would have to expend in completing certain portions of the road which the contractor had only partially finished. The contractor objected to this deduction, but payments were made and received after that time upon the estimate.

The minutes of the meeting of the board on August 16, 1920, reflected that the contractor demanded part payment on estimate No. 11, rendered by Parkes Engineering Company, and that the board ordered $2,000 paid thereon.

The minutes of October 11, 1920, reflected that the contractor made a proposition to the board to accept $8,000, in addition to the balance due him on estimate No. 11, in full payment of his claim for damages, which was refused by the board. The *addendum* to the minutes of that meeting is as follows:

"It appears that there is still due contractor G. C. Williams, on estimate No. 11, the sum of $3,416.27, and that there is cash on hand amounting to approximately $1,500; motion is made, seconded and passed that the sum of $1,000 be paid contractor Williams on said estimate, and that warrants be drawn in his favor on the Perry State Bank for said sum.

"D. M. Wallace,
"A. F. Leigh."

This payment was accepted by the contractor, which left a balance due him on final estimate No. 11 of $2,416.

Shortly after receiving this payment, he brought the suit heretofore mentioned against the district, in the circuit court of Perry County, for $21,913.87, in which he obtained the vacation decree for $20,618.82, and which was entered *nunc pro tunc* by Chancellor Atkinson, the successor of Chancellor Sellers.

Prior to the entry of the *nunc pro tunc* decree, the new commissioners for the district employed Edward Gordon to represent it. Mr. Gordon made an effort to procure court files and papers in the suit brought by the contractor against the district, for the purpose of appeal-

ing the case to the Supreme Court, and to use in an attempt to prevent the *nunc pro tunc* entry.  He finally located the papers in the possession of appellant, who refused to deliver them to him unless his client would consent for the clerk to enter the vacation decree rendered by Chancellor Sellers.  Immediately after the entry of the *nunc pro tunc* decree, appellee filed this suit against appellant, which was denominated "a bill of review and general bill in the way of a bill of review and motion for new trial."  The gist of this bill, as amended, was a charge by appellee that appellant and the old commissioners of appellee district entered into a collusion in obtaining the decree against the district in his favor, growing out of said contract, which suit and decree amounted to a fraud upon the taxpayers of the district. It is alleged in the bill that, prior to the institution of the suit by appellant against appellee in which the vacation decree was obtained, there had been a full and complete compromise and settlement between the parties thereto of all matters growing out of the contract to construct a highway.  The bill contained other allegations which it is unnecessary to set out.

Appellant filed an answer denying the material allegations of the bill. Thereafter, and on the 13th day of June, 1923, by agreement of the parties, the question of reopening the cause or setting aside the decree, and the amount due the contractor, was submitted to the court on all the pleadings and evidence which could be obtained in the original suit, in the application for the *nunc pro tunc* decree, and such testimony as each party might introduce responsive to the issues presented by the bill of review and the answer thereto.

The following findings of fact appear in the body of the decree from which is this appeal:

"The court, after hearing the evidence and being well and sufficiently advised, doth find that the proof shows that no defense was made by the road district at the time said cause was submitted to the chancellor.

"That no evidence was taken to be presented on behalf of the district, and that, according to the testimony, the commissioners entered into collusion with said G. C. Williams in obtaining said decree, and that same is in fact a fraud upon the taxpayers of the district, and should therefore be set aside.

"And the court further finds that there was in fact compromise and settlement had between the district and said G. C. Williams, based upon the final estimate No. 11 as made and presented by the engineer of the district, and that the district is only due the said G. C. Williams the sum of $2,416 on said final estimate and compromise settlement, together with six per cent. interest thereon from the date of said final estimate until paid. And that the said G. C. Williams is entitled to judgment against the district for said amount."

After a very careful reading of the testimony we are convinced that the findings of fact by the chancellor are supported by a preponderance thereof. Both engineers, W. J. Parkes and J. C. Spotts, and M. D. Wallace, one of the old commissioners, testified in effect that the settlement was a full and complete compromise of all matters in dispute between the contractor and district. J. C. Spotts, who made estimate No. 11, incorporated language therein to that effect. The language of the letter from the contractor to the district, embraced in the minutes of August 11, 1920, so indicates.

Two witnesses, J. T. Chafin, who was one of the commissioners, and G. B. Colvin, one of the attorneys for the district, testified that the settlement only embraced such matters as were specifically mentioned therein, but we are unable to say that their testimony is of greater weight than the testimony of the other witnesses, assisted by the letter of the contractor.

The new commissioners did not know of this settlement, which was a complete defense to the suit by the contractor, and had no opportunity to present it as a defense when the cause was heard before Chancellor Sellers in vacation. It is quite apparent, from appellant's

own statement, and especially that part of it when on cross-examination, that he had an arrangement with some of the old commissioners by which no real defense would be made against his proposed suit for damages. The following questions and answers indicate it:

"Q. When was it that you had the agreement with the commissioners that you would just have a friendly suit, and that they would not interpose any defense in chancery court to your suit? A. I did not say they did not interpose any defense. I said we would not take any depositions, just lay it before the court. Q. Did they agree upon the amount you should sue for? A. No. Q. Sue for any amount you desired, and it would be a friendly suit, and it would be submitted to the court without going to the trouble of taking depositions or anything? A. Yes sir. Q. When was it that you had that agreement? A. At one of those meetings when they paid me $1,000 or $2,000, I don't remember which."

The act of the contractor in withdrawing or retaining the court files and papers in his suit against appellee was another potent circumstance tending to show that he, in collusion with the old commissioners, fraudulently obtained the vacation decree.

The vacation decree was collusively obtained, and the court was warranted in setting it aside. *McWilkie* v. *Martin,* 25 Ark. 566; *Harris* v. *Stewart,* 65 Ark. 566; *Montague* v. *Craddock,* 128 Ark. 59.

Appellant makes the further contention that the trial court erred in not allowing him $3,100, which he charges was erroneously deducted out of retained percentages with which to complete the highway where it had not been finished in accordance with the plans and specifications. He makes the contention that, according to a preponderance of the evidence, he had finished the contract in all places where he had worked on the road, in accordance with the plans and specifications.

We have read the testimony carefully bearing upon this issue, and think, according to the weight thereof,

that the contractor left the work unfinished in many
places, and that it would have cost at least $3,100 to complete same in the manner provided by the contract.

No error appearing, the decree is affirmed.