Lea v. Bradshaw.

4-4140

Opinion delivered February 3, 1936.

Suit by D. E. Bradshaw against Georgia P. Lea and daughter. From an adverse decree defendants appeal.

*Lewis Rhoton*, for appellants.

*Donham & Fulk,* for appellees.

Baker, J. The statement of this case is tantamount to its decision. After foreclosure decree and sale of certain property in Little Rock, appellants filed a motion to vacate and set aside the decree and sale thereunder. Prior to the entry of the decree, the appellants had filed an answer in which they denied some of the material allegations of the complaint, but they particularly relied upon an affirmative defense, in which they alleged that the notes sued upon and the deed of trust had been materially altered after their execution. As abstracted, these material alterations were to the effect that, under the insurance clause of the deed of trust or mortgage, there had been interlined, by typewriting, the amount of insurance, "twenty-five hundred dollars." The appellants asserted, however, that as they had insurance at the time they borrowed the money, they did not intend to contract for insurance, and therefore erased the insurance clause, by running lines through the blanks providing for the amounts, and by marking out and cancelling the insurance clause. There is also an allegation

that the rate of interest had been changed, either in the notes or in the deed of trust, where the notes were described. This last contention appears to have been abandoned and will not be considered.

The decree in this case was rendered in October of 1934. Although defendant had filed answer, and, although the decree recites the presence of attorneys for the defendants, the defendants did not know of this decree until long after it had been rendered and the property had been sold. After defendants filed the answer they expected that counsel for plaintiff would give notice of an intention to call up the matter before the case proceeded to trial. This was not done.

We do not think it was the intention of counsel for plaintiff to act with any degree of unfairness or discourtesy toward opposing counsel, but they most probably assumed that the answer was more nearly formal or dilatory in its purpose than otherwise.

Whatever the explanation of the mistake, its serious effects were recognized by opposing counsel and by the court upon the filing of a motion to vacate the decree and sale of the property. The court reopened the case.

It is argued here on this appeal that the defendants should not have had the burden of setting aside the decree; that their pleadings and motion made a *prima facie* case, and that they were entitled to a trial upon the merits of the case without that burden of overturning the decree previously rendered. We think the effect of the hearing granted by the court was in conformity to the contentions made here by the appellants.

At the time of the hearing parties were making an effort to agree upon the manner of presentation and for what purposes the hearing would be had when the court interposed the following suggestion:

"The Court: The court will just hear the case on its merits, and, if it appears that the defendants have a valid defense the decree and sale will be set aside; otherwise the decree as heretofore entered, and the order confirming the sale will be permitted to stand as heretofore made." Upon this promise the trial proceeded to a conclusion.

However informal that may appear to be, it at least, takes from the contention made by appellants the vital force of the charge that they were entitled to trial of the case upon its merits. The foregoing statement of the court shows this was the only trial, one upon its merits, and, no doubt, if the court had been convinced that there was any defense, as presented by this testimony, to the original complaint, the court would have set aside the decree and then rendered a new decree according to the findings.

In this trial, upon the merits of the case, the defendants developed fully their contention as to the material alterations of the instruments. That part of the deed of trust in regard to the insurance, about which there is a dispute, contains one whole line and about two-thirds of a second line, where a blank begins, in which it was intended that there should be stated the amount of fire insurance and the amount of tornado insurance. It reads as follows: "It is agreed that insurance shall be kept in force, at the expense of the grantors herein, on said property for the benefit of the holder or holders of said note or notes, to the extent of (then in typewriting on the same line) 'twenty-five hundred dollars'." Then follow two blank lines and a further statement about the insurance. On the blank lines there appear to be wavy pen-lines, as indicating the intention to erase, or to fill in these blank lines so that nothing might be written therein, and in part of the same paragraph, following these blank lines, there are marks made across about one-half of the remaining part of that paragraph. There is no marking of the first line and part of the second line, above quoted, as indicating an intention to erase them. It is insisted, however, that the words "twenty-five hundred dollars" were written in by some one after the instrument was executed. This was a matter sharply in dispute as between those who handled these instruments prior to and at the time of their execution.

Mrs. Lea had made application to People's Trust Company to borrow some money. She was not very well, and her daughter was attending, in part, at least, to their business affairs. Papers were prepared and sent out to

the residence and left there for a time. Miss Lea testifies that under directions or advice given by her father in his lifetime, they ran lines through the blank spaces upon the papers so that nothing else might be written therein, when she returned the papers to the bank. She and one of the bank officers discussed this matter of erasures in the instrument. She says he upbraided her somewhat, and said new papers would have to be prepared to be executed. She advised him her mother was ill and should not be disturbed about new papers, but, if the bank was unwilling to accept the papers as they then were, the matter of the loan would be abandoned. We understand that the effect of her statement was that the papers had been executed at that time, after they had made the erasures and run lines through blanks. The officers in the bank say that after that time, the erasures making so little difference as to be really immaterial, the papers were returned to Mrs. Lea and her daughter, who signed them and acknowledged them and the loan was executed. This occurred ...... years ago. That part of the deed of trust relating to the insurance, even if we treat the larger part of the paragraph as deleted, the first line and part of the second line, with the typewritten addition, ''twenty-five hundred dollars,'' was a contract that the mortgagors would carry this insurance, provided defendants' contention that the words ''twenty-five hundred dollars'' were written in after execution is not found in their favor.

The evidence in this case may be treated as almost evenly balanced. The effect of it, most favorably stated for defendants, however, is that Mrs. Lea and her daughter probably did not intend to contract that they would pay for insurance, as they already had insurance. The bank seemed to accede to this attitude and did not take out any insurance upon this property until the expiration of the policy then in force. The officers of the bank testify, however, that the loan would not have been made if it had been understood that the mortgagors were objecting to insurance upon the property. The objection made at the time the loan was closed was that they did

not want to contract that the bank should carry insurance as they already had it.

Since it is a well-recognized policy, we think known to everybody, that banks, or loan agencies, lending upon real property, require insurance upon the more valuable improvements, and that loans are not made except on condition that such insurance will be carried, it seems highly probable that the bank carried out the contract literally as Mrs. Lea and her daughter desired it carried out, that is, that they permitted the insurance then on the property to continue in force until the expiration date and then wrote other insurance provided for by the deed of trust. Since this is in apparent conformity to the intention of all the parties, the chancellor was justified in finding the issue of fact against the defendants.

The decree is certainly not opposed to the preponderance of the evidence, but seems rather to be supported by it.

We recognize the principle that any material alteration in either the notes or the deed of trust, made after their execution and delivery, would impair their legality, and we think the authorities are also sound that hold that it is not a question of whether the alteration is to the prejudice of the maker of the instrument, but it is a question of whether or not there is the material alteration.

This decision of the trial court, upon the facts, renders other contentions without merit as to substance. Whether the decree should have been set aside before the hearing is immaterial, since the court's finding is to the effect that defendants had failed to establish the affirmative defense they pleaded. The court will not reverse merely for matters of a formal nature. *Washington* v. *Love*, 34 Ark. 93.

Even if there were technical errors, there will be no reversal unless there is prejudice. *Crawford County Bank* v. *Baker*, 95 Ark. 438, 130 S. W. 556; *Minick* v. *Ramey*, 168 Ark. 180, 269 S. W. 565; *Texas Pipeline Co.* v. *Johnson*, 169 Ark. 235, 275 S. W. 329; *Betterton* v. *An-*

*derson,* 171 Ark. 74, 283 S. W. 364; *Browne-Brun Whole-sale Gro. Co.* v. *Hinton,* 179 Ark. 831, 18 S. W. (2d) 369.

We are assuming that this motion was filed at a time within which the relief could be granted as prayed for in the motion to set aside and vacate the decree and have so treated the appeal. We also find from this record, as presented, that the court heard this case upon its merits, not merely the presentation of the motion, but the court went further than appellants argue it was the duty of the court to do. The *prima facie* showing was not required as in *Montague* v. *Craddock,* 128 Ark. 59, 193 S. W. 268. Appellants say that upon showing, under the motion, that there was a *prima facie* defense, it was the duty of the court to set aside the decree. Even if that be conceded to be correct, it appears here that the court permitted trial of the entire case upon its merits, without requiring evidence to make this *prima facie* showing, and then held that the defendants had failed to establish their affirmative defenses.

We are bound by that decree of the chancery court. Decree affirmed.